UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEONG KO,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF LA HABRA; A PUBLIC<br>ENTITY; and DOES 1 THROUGH<br>10, INCLUSIVE,<br><br>                    Defendant. | Case No.:  2:10-CV-10-5305- PJW<br><br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

I.

INTRODUCTION

This is an employment action by a now-former La Habra Police Officer who claims that the City of La Habra violated the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq., by not awarding him annual merit-based pay increases during the 17 months that he was deployed in Afghanistan. The City argues that Plaintiff was not entitled to these step increases because they are merit based and Plaintiff did not and could not have earned them while he was deployed. For the following reasons, the Court concludes that it is

1

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

reasonably certain that Plaintiff would have earned these merit based step increases had he not been deployed and awards him back pay of $22,457.09 and appropriate equitable relief.

## II.

### FINDINGS OF FACT

1. In 1998, after graduating from high school, Plaintiff joined the Army and later became a member of the Army Reserves.

2. In August 2006, after completing the police academy, Plaintiff was hired as a probationary police officer by the City of La Habra. The La Habra Police Department requires probationary officers to complete a one-year probationary period. The one-year probationary term can be extended if the Department believes that an officer's performance is deficient.

3. Probationary officers are hired at salary Step A. The Department evaluates them six months after they are hired to determine if they are entitled to a merit pay step increase--to Step "B"—based on their performance in the first six months. If so, they receive a raise. If not, they can be terminated or can be granted additional time to improve their performance. The La Habra Police Department evaluates probationary officers again six months later, at their one-year anniversary, to determine if they have satisfactorily completed probation. If so, a probationary officer becomes a permanent police officer.

4. An officer's performance evaluation is conducted by his or her supervisor. The supervisor is called upon to rate the officer in categories and provide an overall rating. The Department uses five classifications to rate officers: Outstanding, Exceeds Standards, Meets Standards, Improvement Needed, and Unacceptable.

2

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

5. Plaintiff's performance was formally evaluated after six months on the job and he received an overall rating of "needs improvement." Although Plaintiff was eligible for a merit-based step increase at that time, he did not receive one because he was not performing up to standards.

6. Plaintiff was evaluated again at nine months and again received an overall rating of "needs improvement." As a result, he was again denied a step increase and the Department extended his probationary period for an additional six months because of continuing concerns about his job performance. Plaintiff was put on an individual performance improvement plan, which included a return to field training.

7. At the fifteen-month mark, in November 2007, Plaintiff was evaluated by his supervisor and given an overall rating of "meets standards." The supervisor, Sergeant Baylos, noted that Plaintiff had improved greatly and had a bright future with the Department. As a result of this evaluation, Plaintiff became a permanent officer and received a salary step increase from Step A to Step B.

8. Once an officer completes the probationary period, he is evaluated by his supervisor each year to determine, among other things, whether he is entitled to a merit-based step increase. If an officer meets or exceeds standards during the rating period, he is entitled to a step increase. In practice, merit-based step increases are awarded about 98% of the time. Of the 2% of officers who do not receive merit-based step increases, most of them are probationary officers.

9. On April 28, 2008, five months after receiving his first "meets standards" rating and passing from being a probationary officer to a permanent officer, Plaintiff was deployed to Afghanistan for 17 months. While deployed, he received almost all of the same benefits his co-workers had received, including accrual of vacation pay, personal days, bilingual pay, education incentive, health and dental

3

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

insurance, uniform allowance, and a 6% salary increase. He did not, however, receive annual merit pay step increases, like the other officers in the Department who had not been deployed.

10. In September 2009, Plaintiff returned to work at the La Habra Police Department. Seven months later, he was evaluated for a merit pay increase for the five months prior to his deployment and the seven months following his return. The evaluation did not separate Plaintiff's pre-deployment work from his post-deployment work. Instead, his supervisors considered the period in the aggregate. They rated him overall as "exceeds standards," i.e., a step above "meets standards," for that 12-month period. Of the 30 categories considered applicable in the performance evaluation, his supervisors rated him outstanding in four, exceeds standards in 17, and meets standards in nine. As a result, he was awarded a merit-based step increase.

### III.

### CONCLUSIONS OF LAW

1. This suit was brought under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq. or "USERRA." This law is intended to protect service members from suffering prejudice in their civilian jobs as a result of being deployed for military service. Section 4316(a) guarantees returning service members "the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."

2. The law is further defined by the regulations, which provide that the returning service member's "rate of pay must be determined by taking into account any pay increases, differentials, step increases, merit increases, or periodic

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

increases that the employee would have attained with reasonable certainty had he or she remained continuously employed during the period of service." 20 C.F.R. § 1002.236(a) (emphasis added); see also *Ko v. City of La Habra*, 534 Fed. Appx. 615 (9th Cir. 2013). "Reasonable certainty" means "a high probability." 20 C.F.R. § 1002.213; see *Montgomery v. Southern Electric Steel Co.*, 410 F.2d 611, 613 (5th Cir. 1969) (90% success of probationary employees becoming permanent meets reasonable certainty test); *Pomrening v. United Air Lines, Inc.*, 448 F.2d 609, 615 (7th Cir. 1971) (86% pass rate of training class meets reasonable certainty test).

3. In evaluating the prospects of a merit-based pay increase, the Court considers the returning employee's work history, his or her history of merit increases, and the work and pay history of employees in the same or similar position. 20 C.F.R. § 1002.236(a).[1]

4. Thus, the Court is tasked with determining whether it is reasonably certain that Plaintiff would have received a step increase seven months after he was deployed to Afghanistan had he not been deployed. The decision is somewhat difficult in this case because of Plaintiff's history with the Department. He struggled to pass through the probationary stage and almost did not make it. Though he was entitled to a step increase after six months on the job, he was denied that increase because he was performing poorly. He was also denied an increase at nine months. In fact, he was sent backwards and was required to work with a field training officer a second time because of his noted deficiencies.

---

[1] The parties disagree as to whether the Court should consider Plaintiff's post-deployment work in evaluating the prospect of him receiving the step increase seven months after he was deployed. The Court has not considered that work in reaching this decision and assumes without deciding that post-deployment work should not be considered.

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

5.  The Department did conclude at the end of 15 months, however, that Plaintiff was performing satisfactorily and awarded him a step increase. The Department also determined in the five months following this step increase that he performed exceptionally well, not just meeting standards, which would have entitled him to a step increase had it been the 12-month mark, but exceeding standards overall. In doing so, Plaintiff's supervisors rated him as outstanding or exceeding standards in 21 of 30 rating categories. In the remaining nine categories, they found that he met standards.

6.  The issue before the Court is whether Plaintiff would have met standards seven months after he was deployed had he not been deployed. The Court analyzes this issue not only in the context of Plaintiff's prior job performance but also in the context of the Department's practice of awarding step increases 98% of the time. Thus, for any officer in the Department, there is a 98% chance that he or she would meet standards and get a step increase 12 months after he or she met standards and was awarded a step increase. Officer Ko was not any officer, though. He had considerable difficulty making it through the probationary period. Due to these difficulties and the short span of his time on the job, the Court would agree with Defendant's that Officer Ko's chances of meeting standards following his deployment were below 98%. But the Court also has to factor in the fact that, for the five months preceding his deployment, Officer Ko was performing exceptionally well, well above what was necessary to be found to meet standards and to receive a step increase. It seems highly probable based on this track record that he would have continued to perform well had he not been deployed and would have qualified for a step increase. Taking all these factors into consideration, the pluses and the minuses, the Court finds that it is reasonably certain that had Plaintiff not been deployed he would have been found to be meeting standards and

6

would have received a step increase seven months after he was deployed. For that reason, Plaintiff is awarded $22,457.09 for lost earnings.[2]

7. Plaintiff seeks liquidated damages, arguing that Defendant's conduct was willful because it knew or should have known that its failure to award Plaintiff the step increases was prohibited under the law. The Court disagrees. This law is not clear. The procedural history of this case is proof of that. And when Defendant denied Plaintiff the step increase, it did so because it believed that its rules required that it do so and because its lawyers advised them to. For these reasons, Plaintiff's request for liquidated damages is denied.

8. On March 2, 2016, during the pendency of this litigation, Plaintiff retired from the City of La Habra. He seeks an Order requiring the City to retroactively increase his pay step rate to reflect the pay step rate that he would have obtained but for his military leave from April 28, 2008 to September 12, 2009. Plaintiff reached Step Rate "D" in May of 2012. The record reflects that Plaintiff would have obtained Step Rate "F" in or before May of 2012 with reasonable certainty "if [he] had remained continuously employed[]" between April 2008 and September 2009 instead of taking military leave. *See* 38 U.S.C. § 4316. Accordingly, Defendant is ordered to take all reasonable steps to retroactively increase Plaintiff's Step Rate from "E" to "F".

IT IS SO ORDERED.

DATED: March 30, 2017

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

---

[2] The parties have agreed that this figure represents the total amount of lost earnings due to the lost step increases. (Defendant's Post Trial Brief at 2.)

7

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**